UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case No.: 3-05-cv-30021-MAP (Consolidated Appeal)[1]

IN RE: JOSEPH L. LAFRANCE
DEBTOR

**********************************

JOSEPH L. LAFRANCE

APPELLANT

v.

PHOEBE MORSE, UNITED STATES TRUSTEE AND
DENISE M. PAPPALARDO, CHAPTER 13 TRUSTEE

APPELLEES

*********************************************

REPLY BRIEF OF APPELLANT
FRANCIS LAFAYETTE, J.D.
TO THE BRIEFS OF
THE CHAPTER 13 BANKRUPTCY TRUSTEE
AND
THE UNITED STATES TRUSTEE

---

[1]*The consolidated appeals are as follows:*
*Hector Rolon v. Phoebe Morse and Denise Pappalardo, et. al. C.A. 05-30023-MAP;*
*Peter & Denise Caci v. Phoebe Morse and Denise Pappalardo, et. al. C.A. 05-30024-MAP;*
*Mark & Angela Bennett v. Phoebe Morse and Denise Pappalardo, et. al. C.A. 05-30025-MAP*
*Kathleen Daigneault v. Phoebe Morse and Denise Pappalardo, et. al. C.A. 05-30026-MAP;*
*Marta Oyola v. Phoebe Morse and Denise Pappalardo; et. al. C.A. 05-30027-MAP; and*
*Stefan Davis v. Phoebe Morse and Denise Pappalardo; et al. C.A. 05-30028-MAP.*

The Chapter 13 Trustee at page 2 of her brief states that "the bankruptcy court took judicial notice that a pattern had arisen whereby Attorney Lafayette failed to adequately represent his clients." On January 25, 2005, the bankruptcy court filed a complaint with the Massachusetts Board of Bar Overseers and the United States District Court at the request of Steven Meunier, Esq. in the form of a motion to refer Francis Lafayette to the District Court. As the attached Exhibit "A" indicates the Office of the Bar Counsel of the Board of bar Overseers elected to close the file that was created by Judge Boroff's complaint "without disciplinary action."

At footnote 5 of her brief the Chapter 13 Trustee cites the bankruptcy court's ruling that "Clients come to attorneys for a service. Where the service is not provided, or provided poorly, they should not be required to pay for the service . . ." referring to several bankruptcy cases in which Francis Lafayette appeared. However Francis Lafayette suggests that this application is misplaced. For example in the matter of In Re Oyola, the debtor retained Francis Lafayette to pursue a reversal of the foreclosure sale of her home. An adversary proceeding was filed in the context of a Chapter 13 bankruptcy proceeding and after much effort on the part of Francis Lafayette the foreclosure sale was reversed and the debtor was allowed to keep her home, which was her goal in filing the Chapter 13 bankruptcy case in the first place. See Attached Exhibit "B".

The Chapter 13 bankruptcy trustee finds significant that

Francis Lafayette's "alleged illnesses were not unanticipated" as "this excuse" was set forth in the First Motion To Extend." While on the surface this conclusion by the Chapter 13 bankruptcy trustee might seem reasonable, it fails to take into account that Francis Lafayette's medical condition of diabetes and polyneuropathy has worsened considerably and the state of these medical conditions became substantially more severe and disabling with the passage of time. As of the date of this reply brief, Francis Lafayette's medical doctor would like Francis Lafayette to begin liquid injection of insulin as the prescribed medication, which has been substantially increased for both the diabetes and polyneuropathy. Currently the medication dosage for Francis Lafayette's diabetic condition is prescribed at 6 times what it was in the beginning and the medication for the polyneuropathy is now 9 times the daily strength of what it was at the beginning.

Despite the bankruptcy court finding that the "failure to timely file fee applications was not so much from illness as Attorney's inability or unwillingness to prioritize, the illness was in fact the cause of Francis Lafayette's reduced ability to prepare fee application documents on the timetable table set by the bankruptcy court.[2]

---

[2]    The bankruptcy court has been critical of Attorney Lafayette as far back as 1995.   For example in the case of In re: JUDITH A. DRINKWATER, Debtor; In re: WILFREDO GUZMAN, Debtor Chapter 13, Case No. 93-41032-HJB, Case No. 93-42766-HJB Judge Boroff wrote:

"Finally, counsel for the debtors Drinkwater and Guzman each addressed the Court briefly. The attorney for Drinkwater indicated that his client did not object to the allowance of the UST Motions. However, the attorney for Guzman, Francis Lafayette, urged support

The Chapter 13 bankruptcy trustee argues "As the bankruptcy court noted, during the period of October 8, 2004, Attorney Lafayette vigorously engaged in the practice of law filing 33 new bankruptcy cases." What the Chapter 13 bankruptcy trustee fails to appreciate  is that the preparation of these 33 cases did not start on October, but in the normal situation the time between a client first office visit and the actual filing can span more than six months. Therefore it is unfair to give the impression that 33 cases were both prepared and filed during this time period as for the most part the 33 cases begin in Francis Lafayette's office many months prior to the filing date.

In conclusion Francis Lafayette has met his burden that extraordinary or unanticipated circumstances prevented him from timely complying with the court-imposed deadline to file fee applications.

---

for Calabrese because of satisfaction experienced by Guzman with respect to Calabrese's performance. The Court's reminder that the alleged deficient performance in the Guzman case related not to the treatment of the debtor, but rather to an alleged failure to make distributions to creditors, did not elicit a meaningful reply." See Attached Exhibit "B".

Respectfully

*Francis Lafayette*

Francis Lafayette, J. D.
1024 Park Street
Post Office Box 1020
Palmer, MA 01069
(413) 283-7785
BBO 282960


## Certificate of Service

I, Francis Lafayette, J. D., certify that I caused a copy of the foregoing motion to be served upon the parties shown below by mailing a copy of the same, postage prepaid, first class mail to:

Denise M. Pappalardo
Chapter 13 Trustee
Denholm Building
P. O. Box 16607
Worcester, MA 01601

UNITED STATES TRUSTEE
446 Main Street
·14th Floor
WORCESTER, MA 01608

Respectfully

*Francis Lafayette*

Francis Lafayette, J. D.

5

EXHIBIT "A"

# OFFICE OF THE BAR COUNSEL

BOARD OF BAR OVERSEERS OF THE SUPREME JUDICIAL COURT

99 High Street
Boston, Massachusetts 02110
(617) 728-8750
Fax: (617) 482-2992
www.mass.gov/obcbbo

DANIEL C. CRANE
BAR COUNSEL

May 12, 2005

PERSONAL AND CONFIDENTIAL

Francis J. Lafayette, Esq.
1024 Park Street
Palmer, MA 01069-4020

RE:  BBO File No. B6-05-0003

Dear Mr. Lafayette:

The above file was opened as a grievance.  For your reference, enclosed is a copy of correspondence from Judge Boroff to Judge Young dated January 25, 2005.

The file has been closed without disciplinary action.  All records in this office indicate that it was docketed administratively as a grievance, defined by the Rules of the Board of Bar Overseers, Section 1.2, as "a statement of alleged misconduct or request for investigation."  A "formal complaint" is a grievance that has been docketed as a formal complaint for any of the reasons stated in Section 2.4 of the Board Rules.

Very truly yours,

Dorothy Anderson
Assistant Bar Counsel

DA/atb
Enclosure

# UNITED STATES BANKRUPTCY COURT

District of Massachusetts

HAROLD DONOHUE FEDERAL BUILDING & COURTHOUSE

595 MAIN STREET

WORCESTER, MASSACHUSETTS 01608-2076

Judge_Henry_Boroff@mab.uscourts.gov

Henry J. Boroff
Bankruptcy Judge

508-770-8940
Facsimile 508-793-0183

January 25, 2005

Honorable William G. Young, Chief Judge
United States District Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 5710
Boston, Massachusetts 02210



Re:    Francis J. Lafayette, Esq.

Dear Chief Judge Young:

It is my unfortunate duty to submit the following report, and proposed findings of fact and conclusions of law, to the District Court with respect to attorney Francis J. Lafayette, pursuant to the provisions of Rule 83.6(4) of the Local Rules of the United States District Court for the District of Massachusetts (the "District Court Rules") and at the request of the Office of the United States trustee, a division of the Department of Justice.[1] A copy of the request by the United States trustee for referral to the District Court is contained herein. I have allowed the motion, and, by this letter, grant the relief requested.

I have concluded, pursuant to a broad reading of the recent First Circuit case of Sheridan v. Michels (In re Sheridan), 362 F.3d 96 (1st Cir. 2004), that I have only noncore jurisdiction with respect to attorney discipline.[2] Accordingly, I enclose herein

---

[1] I am advised by counsel to the United States trustee that a referral has also been made to the Massachusetts Board of Bar Overseers, but I am not aware of the status of those proceedings.

[2] See also In re LaFrance, et. al., 311 B.R. 1, 25 (Bankr. D. Mass. 1994). The Sheridan holding could be read more narrowly to apply only to those situations where the proposed discipline has a remote or overly speculative effect upon closed bankruptcy cases. This Court, however, is mindful both that the District Court Rules do not provide for delegation of attorney discipline to the Massachusetts bankruptcy courts and that the United States trustee specifically requested referral of the matter to the District Court.

Honorable William G. Young, Chief Judge
January 25, 2005
Page Two

my Memorandum of Decision, dated June 10, 2004, in the cases of In re LaFrance, et.
al. (Case No. 02-42450-HJB, et. seq.), 311 B.R. 1, (Bankr. D. Mass. 2004) which I
respectfully request be accepted as my proposed findings of fact. Id. at 23-24. [3]

Based on those findings, if adopted, I propose that the District Court conclude
that Attorney Lafayette has violated Rules 1.1, 1.3, 1.4(a), and 8.4 (a), (c) and (h) of the
Massachusetts Rules of Professional Conduct, S.J.C. Rule 3:07, as alleged by the
United States trustee in its enclosed motion; and should be disciplined, pursuant to
Rule 83.6(4) of the District Court Rules in such manner as the District Court may deem
meet and just.

Please advise if you require any further findings or information.

                                        Very truly yours,

                                        Henry J. Boroff

cc:    Francis J. Lafayette, Esq. (w/o encl.)
       Stephen Meunier, Esq. (w/o encl.)
       Daniel C. Crane, Bar Counsel

---

[3]The June 10, 2004 order is not on appeal, per se. Attorney Lafayette filed a
notice of appeal, but did so untimely. When the appeal was dismissed by this Court,
pursuant to District Court Rule 203, Attorney Lafayette filed a motion for reconsideration
of the dismissal order, seeking an enlargement of time pursuant to Fed. R. Bankr. P.
8002(c). I denied that motion by order and Memorandum of Decision, dated July 8,
2004, a copy of which is enclosed herein. The July 8, 2004 order has been appealed,
and the appeal is pending before the District Court (Ponsor, J.).

EXHIBIT "B"

CLOSED

# United States Bankruptcy Court
## District of Massachusetts (Worcester)
### Adversary Proceeding #: 03-04053

*Assigned to:* Judge Henry J. Boroff
*Related BK Case:* 02-45398
*Related BK Title:*
*Demand:*
*Nature of Suit:* 434

*Date Filed:* 03/14/03
*Date Terminated:* 03/29/2004

## DEBTOR (AP Case Only)
--------------------

**Marta L. Oyola**
SSN: xxx-xx-1166

## Plaintiff
--------------------

**Marta L. Oyola**
SSN: xxx-xx-1166

represented by **Francis Lafayette**
PO Box 1020
Palmer, MA 01069
(413) 283-7785
Email: francislafayette@onebox.com
*LEAD ATTORNEY*

V.

## Defendant
--------------------

**Fairbanks Capital Corporation**

represented by **Matthew C. Worthen**
Patridge, Snow & Hahn, LLP
180 South Main Street
Providence, RI 02903
(401) 861-8200
*LEAD ATTORNEY*

| Filing Date | # | Docket Text |
|---|---|---|
| 03/14/2003 | 1 | Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief . (pf) (Entered: 03/14/2003) |
| 03/14/2003 | | Summons issued on Fairbanks Capital Corporation. Answer due 4/14/03 for Fairbanks Capital Corporation. (ab) (Entered: 03/14/2003) |
| 03/25/2003 | 2 | Plaintiff/Debtor's Emergency Ex Parte Motion For Temporary Restraining Order And Order To Show Cause . (Emergency Determination Requested.) (ps) (Entered: 03/25/2003) |
| 03/25/2003 | | Hearing Re: [2-1] Motion For Temporary Restraining Order And Order To Show |

| | | Cause by Plaintiff/Debtor Set For 11:30 am on 3/26/03 at Springfield Court . (ps) (Entered: 03/25/2003) |
|---|---|---|
| 03/25/2003 | 4 | Summons Served 3/16/03 on Fairbanks Capital Corporation. (ab) (Entered: 04/02/2003) |
| 03/26/2003 | 3 | ORDER: Hearing Held and Continued Re: [2-1] Emergency Ex Parte Motion For Temporary Restraining Order And Order To Show Cause by Plaintiff . CONTINUED FOR A HEARING ON A PRELIMINARY INJUNCTION FOR 4/10/03 AT 11:30 A.M. AT SPRINGFIELD. DEBTOR TO GIVE NOTICE TO THE DEFENDANT AND PARTRIDGE SNOW & HAHN FORTHWITH. (ab) (Entered: 03/31/2003) |
| 04/10/2003 | | Hearing Held Re: [2-1] Motion For Temporary Restraining Order And Order To Show Cause by Marta L. Oyola. (nb) (Entered: 04/11/2003) |
| 04/10/2003 | 5 | ORDER: Re: [2-1] Motion For Temporary Restraining Order And Order To Show Cause by Plaintiff . FAIRBANKS CAPITAL CORPORATION IS PRELIMINARY ENJOINED FROM PROCEEDING TO EVICT THE DEBTOR IN THE HOUSING COURT, COURTHOUSE ABSENT FURTHER ORDER OF THE COURT. THE DEBTOR IS ORDERED TO PAY TO FAIRBANKS THE SUM OF $626 (REPRESENTING THE PRINCIPAL AND INTEREST) AND $100 (ON ACCOUNT OF REAL ESTATE TAXES) ON OR BEFORE THE 15TH DAY OF EACH MONTH COMMENCING 4/15/03, THOSE FUNDS TO BE DEEMED AS PAYMENTS OF ADEQUATE PROTECTION OF THE LENDER'S INTEREST IN THE PROPERTY DURING THE DEBTOR'S USE THEREOF. (ab) (Entered: 04/11/2003) |
| 04/11/2003 | 6 | Opposition By Defendant To [2-1] Motion For Temporary Restraining Order And Order To Show Cause by Plaintiff . (Filed in open court). (ab) (Entered: 04/11/2003) |
| 04/15/2003 | 7 | Answer to Complaint Filed by Fairbanks Capital Corporation. (ab , ) (Entered: 04/17/2003) |
| 04/22/2003 | 8 | Pre-Trial Hearing scheduled for 6/4/2003 at 11:00 AM Springfield Courtroom - HJB RE: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief. (ab , ) Notice of Pre-Trial Hearing Renoticed. Modified on 4/23/2003 (ab , ). (Entered: 04/22/2003) |
| 04/23/2003 | 9 | Certificate of Service Re: 8 Pre-Trial Hearing scheduled for 6/4/2003 at 11:00 AM Springfield Courtroom - HJB RE: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief. (ab , ) (Entered: 04/23/2003) |
| 04/23/2003 | 10 | Pre-Trial Order. Pre-Trial Conference set for 6/4/2003 at 11:00 AM at Springfield Courtroom - HJB. (ab , ) (Entered: 04/23/2003) |
| 04/23/2003 | 11 | Hearing Scheduled. Pre-Trial Conference set for 6/4/2003 at 11:00 AM at Springfield Courtroom - HJB. RE: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief. (ab , ) (Entered: 04/23/2003) |
| 04/23/2003 | 12 | Certificate of Service Re: 11 Hearing Scheduled. Pre-Trial Conference set for |

| | | |
|---|---|---|
| | | 6/4/2003 at 11:00 AM at Springfield Courtroom - HJB. RE: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief. (ab , ) (Entered: 04/23/2003) |
| 06/04/2003 | 13 | Pre-Trial Stipulation Re: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation Filed by Defendant Fairbanks Capital Corporation and Plaintiff Marta L. Oyola. (Filed in Open Court.) (ps , ) (Entered: 06/05/2003) |
| 06/04/2003 | | Hearing Held RE: 1 Complaint 03-4053. (ps , ) (Entered: 06/05/2003) |
| 06/04/2003 | 14 | Order Re: Pre-Trial on complaint to Set Aside Foreclosure. CONTINUED TO 6/18/03 AT 10:00 AM AT SPRINGFIELD. COUNSEL TO EACH PARTY IS SANCTIONED IN THE AMOUNT OF $100 ON ACCOUNT OF HIS FAILURE TO TIMELY FILE THE PRE-TRIAL STATEMENT, SUCH PAYMENT TO BE MADE TO ANY ENTITY IN THE DISTRICT OF MASSACHUSETTS RENDERING SERVICES TO INDIGENT PERSONS. (Entered: 06/05/2003) |
| 06/04/2003 | | Pre-Trial Hearing Scheduled RE: 1 Complaint to Set Aside Foreclosure. Pre-Trial Conference set for 6/18/2003 at 10:00 AM at Springfield Courtroom - HJB. (ps , ) (Entered: 06/05/2003) |
| 06/18/2003 | | Hearing Held Re: Pre-Trial on Complaint to Set Aside Foreclosure. (ps , ) (Entered: 06/19/2003) |
| 06/18/2003 | 15 | Order Re: Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. CONTINUED TO 8/20/03 AT 11:00 AM AT SPRINGFIELD. (ps , ) (Entered: 06/19/2003) |
| 06/18/2003 | | Pre-Trial Hearing Scheduled RE: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief. Pre-Trial Conference set for 8/20/2003 at 11:00 AM at Springfield Courtroom - HJB. (ps , ) (Entered: 06/19/2003) |
| 08/20/2003 | | Hearing Held RE: 1 Complaint. (ps , ) (Entered: 08/21/2003) |
| 08/20/2003 | 16 | Order Re: 1 Complaint to Set Aside Foreclosure. CONTINUED TO 9/24/03 AT 11:00 AM AT SPRINGFIELD.(ps , ) (Entered: 08/21/2003) |
| 08/20/2003 | | Hearing Scheduled RE: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief. Pre-Trial Conference set for 9/24/2003 at 11:00 AM at Springfield Courtroom - HJB. (ps , ) (Entered: 08/21/2003) |
| 09/24/2003 | | Hearing Held Re: 1 Complaint. (ps , ) (Entered: 09/25/2003) |
| 09/24/2003 | 17 | Order Re: 1 Complaint. CONTINUED TO 10/29/03 AT 11:00 AM IN SPRINGFIELD. (ps , ) (Entered: 09/25/2003) |
| 09/25/2003 | | Hearing scheduled for 10/29/2003 at 11:00 AM Springfield Courtroom - HJB RE: 1 Complaint. (Entered: 09/25/2003) |
| 09/27/2003 | 18 | BNC Certificate of Mailing - PDF Document. Service Date 09/27/2003. (Related Doc # 17) (Admin.) (Entered: 09/28/2003) |

| 10/29/2003 | 19 | Order Re: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief. CONTINUED TO 12/10/03 AT 11:00AM IN SPRINGFIELD. (ps, usbc) (Entered: 10/30/2003) |
| 10/29/2003 | | Hearing Held RE: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief. (ps, usbc) (Entered: 10/30/2003) |
| 10/30/2003 | | Pre-Trial Hearing scheduled for 12/10/2003 at 11:00 AM Springfield Courtroom - HJB RE: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation NOS 434 Injunctive Relief. (Entered: 10/30/2003) |
| 12/10/2003 | | Pre-Trial Hearing Held and Continued to January 21, 2004 at 11:00AM in Springfield Re: 1 Complaint. (ps, usbc) (Entered: 12/11/2003) |
| 12/10/2003 | 20 | Order dated 12/10/03 Re: 1 Complaint. CONTINUED TO JANUARY 21, 2004 AT 11:00AM IN SPRINGFIELD. (ps, usbc) (Entered: 12/11/2003) |
| 12/11/2003 | 21 | Court Certificate of Mailing RE: 20 Order. (ps, usbc) (Entered: 12/11/2003) |
| 12/11/2003 | | Pre-Trial Conference set for 1/21/2004 at 11:00 AM at Springfield Courtroom - HJB Re 1 Complaint. (ps, usbc) (Entered: 12/11/2003) |
| 01/21/2004 | | Pre-Trial Hearing Held Re: 1 Complaint to Set Aside Foreclosure filed by Plaintiff Marta L. Oyola. (sas, usbc) (Entered: 01/22/2004) |
| 01/21/2004 | 22 | Order Dated 1/21/04 Re: 1 Complaint to Set Aside Foreclosure filed by Plaintiff Marta L. Oyola. REPORTED SETTLED, STIPULATION TO BE FILED WITHIN 10 DAYS. (sas, usbc) (Entered: 01/22/2004) |
| 01/24/2004 | 23 | BNC Certificate of Mailing - PDF Document. Service Date 01/24/2004. (Related Doc # 22) (Admin.) (Entered: 01/25/2004) |
| 01/30/2004 | 24 | Settlement and Release Agreement by Defendant GMAC Mortgage Corporation Successor to Fairbanks Capital Corporation and Marta L. Oyola, Plaintiff Re: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief Filed by Defendant Fairbanks Capital Corporation. (ps, usbc) (Entered: 02/02/2004) |
| 01/30/2004 | 25 | Motion to Approve Re:24 Settlement and Release Agreement by Defendant GMAC Mortgage Corporation Successor to Fairbanks Capital Corporation and Marta L. Oyola, Plaintiff Re: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation. NOS 434 Injunctive Relief Filed by Defendant Fairbanks Capital Corporation. c/s (ps, usbc) (Entered: 02/02/2004) |
| 01/30/2004 | 26 | Motion for Extension of Time to File Exhibits Referred to in Settlement and Release Agreement Filed by Defendant GMAC Mortgage Corporation Successor to Fairbanks Capital Corporation. c/s (ps, usbc) (Entered: 02/02/2004) |
| 02/05/2004 | 27 | Endorsed Order dated 2/5/04 Re: 26 Motion for Extension of Time to File Exhibits Referred to in Settlement and Release Agreement Filed by Defendant GMAC Mortgage Corporation Successor to Fairbanks Capital Corporation (30 days). ALLOWED. 2/5/2004. (ps, usbc) (Entered: 02/05/2004) |
| | | |

| 02/07/2004 | 28 | BNC Certificate of Mailing - PDF Document. Service Date 02/07/2004. (Related Doc # 27) (Admin.) (Entered: 02/08/2004) |
| 03/02/2004 | 29 | Exhibit Re: 25 Motion to Approve Re:24 Settlement and Release Agreement by Defendant GMAC Mortgage Corporation Successor to Fairbanks Capital Corporation and Marta L. Oyola, Plaintiff Re: 1 Complaint (03-4053) Marta L. Oyola vs. Fairbanks Capital Corporation, NOS 434 Injunctive Relief Filed by Defendant Fairbanks Capital Corporation. c/s (ps, usbc) (Entered: 03/02/2004) |
| 03/16/2004 | 30 | Endorsed Order dated 3/16/04 RE: 25 Motion to Approve Re:24 Settlement and Release Agreement by Defendant GMAC Mortgage Corporation Successor to Fairbanks Capital Corporation and Marta L. Oyola, Plaintiff. ALLOWED. NO RESPONSES FILED. (ps, usbc) (Entered: 03/18/2004) |
| 03/20/2004 | 31 | BNC Certificate of Mailing - PDF Document. Service Date 03/20/2004. (Related Doc # 30) (Admin.) (Entered: 03/21/2004) |
| 03/29/2004 | | Disposition of Adversary. Adversary Number 03-4053 Settled Complaint. (ps, usbc) (Entered: 03/29/2004) |
| 03/29/2004 | | Adversary Case 03-4053 Closed. (ps, usbc) (Entered: 03/29/2004) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| Transaction Receipt | | | |
| 06/01/2005 05:55:16 | | | |
| PACER Login: | ll0044 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 03-04053 Fil or Ent: Fil Doc From: 0 Doc To: 99999999 Format: HTMLint |
| Billable Pages: | 3 | Cost: | 0.24 |

EXHIBIT "C"

# CRAIG AND MACAULEY | PROFESSIONAL CORPORATION

CRAIG AND MACAULEY

FIRM OVERVIEW

PRACTICE AREAS

ATTORNEYS

NEWS

PUBLICATIONS

DECISIONS

THE MASSACHUSETTS
BANKRUPTCY PAGE

CONTACT

SITE MAP

DIRECTIONS

In re: JUDITH A. DRINKWATER, Debtor. In re: WILFREDO GUZMAN, Debtor

Chapter 13, Case No. 93-41032-HJB, Case No. 93-42766-HJB

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS

March 24, 1995, Decided

Counsel: ATTORNEY: Mark A. Papirio, Springfield, MA.

TRUSTEE: Cecilia P. Calabrese, James M. Lynch, Feeding Hills, MA.

Judges: Henry J. Boroff, United States Bankruptcy.

Author of opinion: Henry J. Boroff.

## MEMORANDUM OF DECISION

Before the Court for determination are motions filed by James M. Lynch, United States trustee for Region I (the "UST"), pursuant to *11 U.S.C. § 324* and Bankruptcy Rules 9013 and 9014, for the removal of Cecilia Calabrese ("Calabrese") from the above-captioned cases and from all other cases in which she is the Chapter 13 Trustee in the Western Division of this District (jointly and severally the "UST Motions"). The UST Motions also ask the Court to order Calabrese to turnover to the UST, or his designee, all case records, including financial records and funds held by Calabrese relative to the affected cases.

## I. BACKGROUND

Calabrese was appointed to serve as the standing Chapter 13 Trustee for the Western Division of the District of Massachusetts by her predecessor to the UST, effective April 1, 1993. According to the UST, as of December 31, 1994, Calabrese serves as the Chapter 13 Trustee in approximately 818 cases and currently holds approximately $ 867,115.05 in payments received under Chapter 13 plans. In January of 1995, the UST terminated the appointment of Calabrese as the standing Chapter 13 Trustee, meaning that she was informed that she would be receiving no new cases. The UST also requested that Calabrese resign from all pending cases in which she served as Chapter 13 Trustee (the "Pending Cases"). Calabrese refused. In response, the UST filed the instant motions.

## II. THE PLEADINGS

The pleadings filed by the parties portray totally disparate pictures of Calabrese and her performance as Chapter 13 Trustee.

The UST Motions were filed on February 24, 1994. The motion with respect to the Drinkwater case complains that, notwithstanding an order confirming the plan on July 14, 1994, the dismissal of that case (at the request of the debtor) on September 21, 1994 and the closing of the case on October 5, 1994, Calabrese failed to (i) enter any of the claims in her computer system for payment, (ii) a final report as required by *11 U.S.C § § 704(9)* and 1302(b) or (iii) ever distribute any of the funds collected by her, other than a payment of her fee.n1

n1 The motion also claims that the payment to Calabrese was improperly granted because she never properly noticed the UST.

The motion with respect to the Guzman case complains that, notwithstanding confirmation of the debtor's plan on July 14, 1994, the twelve payments received by Calabrese during the period between February 1, 1994 and December 6, 1994, totalling $ 5,940.00, were carried in Calabrese's computer records as "error receipts" and were never distributed to creditors.

More damaging than the foregoing, are the UST allegations common to each of the UST Motions. In substance, the UST cites the following alleged deficiencies in Calabrese's performance:

1. Calabrese has demonstrated a pattern of being unable to properly administer cases evidenced by (a) her performance in the Drinkwater and Guzman cases, (b) a complaint by the Commonwealth of Massachusetts Department of Revenue

that she had failed to make distributions to that agency in a number of cases; (c) a confusing response by Calabrese to the UST with respect to at least one of those cases; (d) Calabrese's failure to follow through on her advice to the UST that she would shortly move to dismiss a number of cases on account of the failure of those debtors to make required payments; and (e) repeated mathematical and substantive legal errors in proposed orders of confirmation submitted to the UST for approval or submitted to the Court for allowance.n2

2. Calabrese is not accountable for funds entrusted to her care as Trustee, evidenced by an accounting system so deficient that (i) as of September 23, 1994, her computer system carried the sum of $ 244,728.96 as "error receipts"; (ii) Calabrese has not timely performed basic monthly bank reconciliations n3; (iii) in December of 1994, auditors chosen by the Department of Justice to audit Calabrese's records n4 were unable to complete their audit or even reconcile her bank balances with her computer records or any other records; (iv) Calabrese had maintained inadequate bonding for several months; and (v) Calabrese had failed to submit required monthly reports to the UST since September, 1994 (approximately five [5]months); and

3. Calabrese had, on three (3) occasions, drawn compensation in excess of that permitted by her compensation order, pursuant to 28 U.S.C. § 586(e), or as allowed by paragraph 13-19(d) of this Court's Joint Procedural Order of September 1, 1994.

n2 On July 12, 1994, in response to a wide array of defective confirmation orders submitted to the Court for allowance (almost all of such defects prejudicing the rights of debtors), this Court ordered Calabrese to show cause why she should not be removed from 21 separate cases. At the hearing, held on July 18, 1994, Calabrese was not removed from those cases, but was ordered to (i) file weekly progress reports on each case not then closed and (ii) submit all future proposed confirmation orders to the UST for approval prior to submission of the orders to the Court for allowance. The UST claims that many of the orders submitted to the UST for approval thereafter were similarly defective.

n3 The UST claims that, as of September 30, 1994, Calabrese had not reconciled her trust accounts for the preceding seven (7) months.

n4 Every standing trustee is audited annually by a public accounting firm chosen by the Department of Justice

The "Initial Opposition of Chapter 13 Trustee Calabrese to Motion for Order Removing Trustee" (the "Oppositions"), filed March 16, 1995 in each of the Drinkwater and Guzman cases n5, paints a dramatically different picture of Calabrese's performance. According to the Oppositions, Calabrese failed to act in the Drinkwater and Guzman cases because she failed to receive notice of the Guzman confirmation or Drinkwater dismissal. She promises to make the appropriate disbursements as soon as she receives the appropriate notices. With respect to the complaint of the Commonwealth of Massachusetts Department of Revenue, Calabrese either has acted (or will soon act) on those complaints. In reply to the alleged problems with the Department of Justice sponsored audit, Calabrese claims that she provided all of the information requested and her accounts balanced against her records. In response to the UST complaint that her monthly reports to the UST have not been filed since October of 1994, Calabrese answers that she,

has submitted monthly expense reports, monthly trust fund reports for both pre and post confirmation accounts and statements of her receipts and expenses, and bank reconciliations for her expense account for each month from October 1994 through February 1995 to the U.S. Trustee. All her financial reporting to the U.S. Trustee is current and complete. ... Her records and her actions are fully accountable.

Oppositions, Page 3.

n5 Pursuant to Bankruptcy Local Rule 28, the Oppositions were due on or before March 3, 1995. In addition, notwithstanding their filing with the Court on March 16, 1995 at 9:45 a.m., the Oppositions were not served on the UST until minutes before the hearing on March 17, 1995, robbing the UST of a fair opportunity to respond. Because of the gravity of the matters before the Court, the Oppositions were considered by the Court. However, this was a peculiar way to persuade the Court that Calabrese was performing her duties competently and expeditiously.

Calabrese rebuts the UST claim that she took improper compensation, by attributing the problem to "poor communications and bad timing", and rejects the notion that she failed to provide adequate notice of to the UST of her request for compensation in the Drinkwater case. She responds to the claim of inadequate bonding by noting that her bond was subsequently increased. Finally, she counters the claim that she has submitted improper proposed confirmation orders to the UST by indicating the problems in each of the affected cases have been "competently resolved".

In closing, Calabrese requests, as a matter of due process, the right to discovery and an evidentiary hearing.

III. THE HEARING

The Court conducted a nonevidentiary hearing on the UST Motions on March 17, 1995 in Worcester n6. At the outset, the parties reached their only agreements. First, the parties agreed that only the Court has jurisdiction to remove Calabrese from the cases in which she serves as Trustee. Second, although the UST has determined not to appoint Calabrese to any further cases n7 and this determination is not challenged, the parties also agree that, as a matter of due process. Calabrese can not be removed from the Pending Cases, absent this Court's determination, pursuant to § 324.

n6 The hearing was originally scheduled for March 10, 1995. However, on March 8, 1995, Calabrese requested that the hearing be continued until March 17, 1995, because (i) she had a previously scheduled medical appointment on March 10, 1995 and (ii) her recently retained counsel, Michael B. Roitman, required additional preparation time. The motion was allowed. On March 17, 1995, Mr. Roitman appeared for Calabrese. Calabrese was not present.

n7 The parties appear to agree that the UST acted within the limits of his discretion when he made this determination. See also 28 CFR 58.2 (1986); Richman Straley et. al. 48 F.3d 1139, 1995 U.S. App. LEXIS 2780, 1995 WL 61288 (10th Cir. 1995).

Oral argument by Attorney Gary Donahue ("Donahue") on behalf of the UST, and Attorney Michael Roitman ("Roitman") on behalf of Calabrese, essentially tracked the positions taken by each in their respective papers. However, Donahue added that only two days before the hearing, Calabrese had forwarded the missing monthly reports for the period of October 1994 through February, 1995. However, he noted that the reports were incomplete and unverifiable since, inter alia, required copies of bank statements were not included. Furthermore, the reports allegedly reflected a discrepancy of approximately $ 28,000, a matter of concern to the UST.

The Court raised the recent filing of the monthly reports with Roitman, particularly with respect to the clear implication in the Oppositions that these reports had been timely filed. In response, Roitman conceded that they were not timely filed and that the contrary implication, if misleading, may have been his fault. He did not, however, meaningfully respond to the UST allegation that the reports were insufficient.

Roitman insisted that Calabrese was entitled to an evidentiary hearing after an opportunity to conduct discovery. He indicated that a sixty (60) day discovery period was a "bare minimum" of what was required.

Finally, counsel for the debtors Drinkwater and Guzman each addressed the Court briefly. The attorney for Drinkwater indicated that his client did not object to the allowance of the UST Motions. However, the attorney for Guzman, Francis Lafayette, urged support for Calabrese because of satisfaction experienced by Guzman with respect to Calabrese's performance. The Court's reminder that the alleged deficient performance in the Guzman case related not to the treatment of the debtor, but rather to an alleged failure to make distributions to creditors, did not elicit a meaningful reply.

At the conclusion of the hearing, the Court took the matter under advisement.

IV. DISCUSSION

Section 324 of the Bankruptcy Code provides:

(a) The court, after notice and a hearing, may remove a trustee, other than the United States Trustee, or an examiner, for cause.

(b) Whenever the court removes a trustee or examiner under subsection (a) in a case under this title, such trustee or examiner shall thereby be removed in all other cases under this title in which such trustee or examiner is then serving unless the court orders otherwise.

11 U.S.C. § 324.

There are very few published decisions relating to the removal of standing Chapter 13 Trustees. In the case of Matter of Chapter 13, Pending And Future Cases, 19 Bankr. 713 (Bankr. W.D. Wash. 1982), the issue facing the court was whether a Chapter 13 Trustee could be removed on the grounds of the sexual harassment of employees, if the Trustee was otherwise competently performing his duties. On reconsideration, the court removed the Trustee. Id. In the case of Flournoy v. Hershner, 68 Bankr. 165 (Bankr. M.D. Ga. 1986), the Bankruptcy Judge decided to consolidate the District's two Chapter 13 operations by removing one Trustee. However, before the issue of cause under § 324 could be determined, the Trustee scheduled to be terminated chose to resign, thereby avoiding the § 324 hearing. The primary issue remaining was the appropriate amount owed to the departing Trustee with respect to the cases turned over n8. Finally, in the recent case of Richman v. Straley, et al. 48 F.3d 1139, 1995 WL 61288, the issue before the court was whether a standing Chapter 13 Trustee had a due process right to appointment in future cases. The Richman court answered in the negative, drawing a careful distinction between appointment in future cases (to which the court ruled there was no due process right) with appointment in pending cases (with respect to which the Court felt that removal could be accomplished only through § 324). Id., 48 F.3d 1139, 1995 WL 61288 at 2.

n8 Neither party has yet suggested a solution of this type.

Without helpful precedent in the Chapter 13 context, this Court looks for precedent in the Chapter 7 context. Chapter 7 Trustees have been removed under Section 324 for cause. What constitutes sufficient cause is not defined in the Code but rather is left for the courts to determine on a case by case basis. *In re Haugen Construction Serv., Inc., 104 Bankr. 233, 240 (Bankr. D. N.D. 1989).* Recently, in the case of *In re Lundborg, 110 Bankr. 106 (Bankr. D. Conn. 1990),* that court succinctly summarized the various decisions finding sufficient cause for removal of a Chapter 7 Trustee:

Cause has been found to exist, inter alia, where the trustee is not disinterested, *In re BH & P, Inc., 103 Bankr. 556, 561 (Bankr. D. N.J. 1989); In re Paolino, 80 Bankr. 341, 344 (Bankr. E.D. Pa. 1987),* and where the trustee fails to perform his or her duties, *Matter of Schoen Enter. Inc., 76 Bankr. 203, 206 (Bankr. M.D. Fla. 1987);* or unreasonably delays in the performance of those duties, *Matter of Island Amusement, Inc., 74 Bankr. 18, 19 (Bankr. D. P.R. 1987); In re Mina-Pak, Inc., 72 Bankr. 430, 431 (Bankr. S.D. Tex. 1987).* In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud. *In re Acadiana Electrical Serv., 66 Bankr. 164, 166 (Bankr. W.D. La. 1986); United States ex rel. People's Banking Co. v. Derryberry (In re Hartley), 50 Bankr. 852, 859 (Bankr. N.D. Ohio 1985).* See also *Matter of Freeport Italian Bakery, Inc., 340 F.2d 50, 54 (2d Cir. 1965).* A trustee should not be removed for mistakes in judgment where that judgment was discretionary and reasonable under the circumstances. *In re Haugen Constr. Serv., Inc. supra, 104 Bankr. at 240;* and courts should consider the best interests of the estate, rather than those of a single movant-creditor, when determining whether to remove a trustee. *Baker v. Seeber (In re Baker), 38 Bankr. 705, 708 (D. Md. 1983); Gross v. Russo (Matter of Russo), 18 Bankr. 257, 273 (Bankr. E.D. N.Y. 1982)*

*110 Bankr. at 108.*

Notwithstanding the foregoing, the pressing issue before the Court is not whether Calabrese should be permanently removed from Pending Cases as Chapter 13 Trustee. The Court agrees with the parties that Calabrese is entitled to an evidentiary hearing after a period of discovery. However, despite the agreement of the parties that Calabrese is entitled to that evidentiary hearing, there exists a tension between the UST's call for expedited action and Calabrese's assertion that sixty (60) days for discovery is a bare minimum of what she needs to fairly present her case. n9 Therefore, the Court believes that the issues requiring prompt attention are (i) whether the Court should suspend Calabrese from her duties pending an evidentiary hearing on whether she should be permanently removed as Chapter 13 Trustee of the Pending Cases, (ii) whether to appoint the UST as acting Chapter 13 Trustee of the Pending Cases, and (iii) where to locate the source of this Court's jurisdiction to order the foregoing. Inasmuch as this Court was able to find no reported decisions in which a Bankruptcy Court considered such relief, the issue appears to be of first impression.

n9 Of course, additional time would be consumed by the evidentiary hearing itself, the rendering of a decision by the Court and the exercise of any appellate rights.

Temporary suspension of Calabrese as Chapter 13 Trustee of the Pending Cases should only be employed if that form of relief appears best suited to preserve the rights of the parties pending trial, without prejudicing the rights of others. The classic methodology for preserving the status quo pendente lite is the preliminary injunction. Therefore, although the relief to be granted here is not in the nature of a preliminary injunction, the Court looks to preliminary injunction standards employed by the First Circuit as a reasonable and equitable approach to determine whether such a temporary suspension of Calabrese would be the appropriate relief under the circumstances. More specifically, the Court must determine (i) whether there is a reasonable likelihood that the UST Motions will be allowed, (ii) whether absent the temporary suspension there is a risk of irreparable harm to those whose interests the UST represents, namely the parties in interest in the Pending Cases, (iii) whether such injury is outweighed by any injury that such a temporary suspension may do to the rights of Calabrese, and (iv) whether the public interest would be adversely affected by such a temporary suspension. See *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1225 (1st Cir. 1994); Teradyne, Inc. v. Mostek Corp. 797 F.2d 43, 51-52 (1st Cir. 1986) Planned Parenthood League of Massachusetts v. Bellotti, 641 F.2d 1006, 1009 (1st Cir, 1981)*

This Court finds that there is a reasonable likelihood that the UST Motions will be allowed, and makes that finding for the following reasons. First, Calabrese claims that, notwithstanding her use of a computer accounting system for her duties, she maintains records of the 800 Pending Cases (and, therefore, inclusive of the necessarily thousands of financial transaction entries of claims, receipts and disbursements) part by computer and part by hand (Transcript or Hearing of March 17, 1995 [the "Transcript"], p. 20). The UST's allegation that over $ 200,000.00 (20%) of the funds that she holds are listed in her computer records as "error receipts" was uncontroverted. And, Calabrese suggests that her preparation or reports of funds held by her (in late 1994) were left to await some "baseline" yet to be established for 1993, Transcript, p.20. None of these admissions or uncontroverted allegations by Calabrese bode well for the likelihood that she can persuade the Court that her records are readily subject to audit. Second, Calabrese admits that she failed to provide the UST with monthly reports for several months. Transcript, pp. 18-20. Her hurried and incomplete effort to supply the reports in advance of the hearing does not negate her previous failure to render herself accountable to the UST and suggests that Calabrese has been unwilling (or unable) to permit the UST the review to which the UST is entitled. Third, Calabrese does not contest the UST's allegation that she has frequently submitted orders of confirmation that were in varying respects defective n10 and has not timely made distributions or filed motions to dismiss cases where dismissal was required. She merely says that on the cases subject to the Department of Revenue complaint she "started making disbursement on the claims; filed a motion to dismiss, or will move to dismiss each of the cases." Oppositions, p.2. This is hardly a strong statement of denial.

n10 Calabrese can hardly contest the problems which led to this Court's Order of July 18, 1994 with respect to 21 such cases. As to confirmation orders since that time, several of the orders referred to in the UST Motions are described in the Oppositions to be resolved because now moot. Calabrese does not specifically controvert the UST's allegation that the confirmation orders were defective when originally presented.

In view of the colorable allegations of Calabrese's failure to (i) properly maintain the books and records necessary to the orderly administration of the Chapter 13 program in the Western Division of this District (ii) file with the UST timely and verifiable reports of her financial transactions, and (iii) properly administer the cases in her charge, many of which allegations are uncontroverted n11 and are, therefore, deemed by the Court under the circumstances as acknowledged by her for the purpose of this interim order, the Court finds that it is reasonably likely that the UST will succeed in showing breach of fiduciary duty and at least the risk of actual harm to parties in interest in the Pending Cases.

n11 Even Calabrese says "she contests many, if not most, of the allegations contained in the [UST Motions]." Transcript, P.16). Pointedly, Calabrese does not contest all of the allegations.

The Court also finds that absent the temporary suspension, there is a risk of irreparable harm to parties in interest. Although there has been absolutely no evidence which would support a finding of defalcation, this Court takes judicial notice that a delay in the administration of a Chapter 13 case can have devastating consequences. In contrast to the administration of a Chapter 7 case, the administration of a Chapter 13 case involves payment through the Chapter 13 Trustee of post-petition debts that the Debtor pays through the Chapter 13 Trustee. Unjustifiable delays in the making of these payments defeats the purpose of the Chapter 13 proceeding itself. When payments are not made to creditors pursuant to the plan, despite the Debtor's compliance with plan requirements, the debtor's credit standing may be further damaged and the reorganization process irreparably harmed. Furthermore, if the Chapter 13 Trustee takes no action despite the debtor's default on making plan payments, otherwise patient creditors may find that they have been restrained from going forward to collect their debts without realizing that no funds have been paid for their benefit to the Chapter 13 Trustee.

The risk of the foregoing harm to creditors outweighs any risk of harm to Calabrese arising from her temporary suspension. The potential economic harm to Calabrese from a temporary suspension could arose on two ways. First, if this Court does not otherwise provide, Calabrese could suffer a loss of compensation, pursuant to 28 U.S.C. § 586(e). Second, with a less in the use of her files, Calabrese's defense of the UST Motions could be hampered. The Court will, therefore, ameliorate the risk of harm by ordering as set forth below, that (i) the UST alone serve as acting Chapter 13 Trustee (subject, of course, to delegation within his office) pending a final order on the UST Motions, (ii) all compensation that would be otherwise be payable on account of disbursements made by the UST on Pending Cases be separately escrowed, (iii) Calabrese be granted a lien in the escrowed account to the extent of her interest, (iv) upon the issuance of a final order, if any, denying the UST Motions, the escrowed fund be turned over to Calabrese as if she had made the disbursements, less only the such amount as the Court may determine was the cost savings to Calabrese and (v) upon the issuance of a final Order allowing the UST Motions, the escrowed account be turned over to the UST, less only such amount as the Court shall determine is due to Calabrese, pursuant to 28 U.S.C. § 586(e) or otherwise. The Court will further order that (i) Calabrese's files be removed from her possession at the cost of the UST, chargeable to her interest in the escrow account only if the UST Motions are allowed, and (ii) the files shall be maintained in the office of the UST in Worcester and be made available to Calabrese for inspection and copying by Calabrese or her agents during reasonable business hours and upon 48 hours prior notice. Finally, this Court's Order will suspend the restrictions of Local Rule 26(D), so that any discovery disputes can be brought to the Court's attention on an expedited basis.

Furthermore, this Court is satisfied the action taken by the Court today does not adversely affect the public interest. It is in the public interest that the Chapter 13 program in the Western Division of this District be efficient and perceived as accountable. The Court's action today attempts to assure that those goals are met, even on a temporary basis.

Finally, this Court must address the source of its jurisdiction to enter the order issued today. Section 324 provides for nothing other than permanent removal. However, this Court doubts it is possible that, in light of the concerns stated above, Congress would have intended that this Court be powerless to address a threat of harm to the debtors and creditors of the Pending Cases n12. In view of the absence of express statutory direction, 11 U.S.C. § 105 plays its critical role. That section provides:

(a) The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from. sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105. Of course, a bankruptcy court's authority to enters orders, employing the flexibility afforded by § 105(a) is not unlimited. Official Unsecured Creditors' Committee v. Stern (in re SPM Mfg. Corp.), 984 F.2d 1305, 1311 (1st Cir. 1993)("Section 105(a) [does not]authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties."); In re GSF Corp., 938 F.2d 1467, 1474 (1st Cir. 1991); In re Plaza de Diego Shopping Center. Inc., 911 F.2d 820 (1st Cir. 1990)("The bankruptcy court's equitable discretion is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code").

n12. Over 800 cases likely constitute over 1,000 individual debtors and well over 10,000 creditors.

The Court is especially mindful of the Plaza case. In that case, this Circuit held that the bankruptcy court had no authority under § 105(a) to appoint a Chapter 11 Trustee, absent refusal of the United States Trustee to act. 911 F.2d 820. However, this Court believes that the order contemplated herein is contained within the sound limitations of § 105(a) and that the facts are distinguishable from the Plaza case. It is true that the power to appoint a Chapter 13 Trustee is, pursuant to 28 U.S.C. § 586(b) established solely in the UST. But this Court is not making a permanent appointment. The Court is making only a temporary appointment of the UST as acting Chapter 13 Trustee of the Pending Cases, pendente lite and based on extraordinary circumstances. The issue now before the Court is not the subject of any provision of the Bankruptcy Code, and, therefore, the Court's order is hardly inconsistent with any provision of the Code. Furthermore, the UST can be hardly heard to complain if the Court's logical choice for acting Chapter 13 Trustee is the UST himself. The Court would also note that within the recent past the UST has served as acting Chapter 13 in the Eastern Division of this District when, for an extended period of time, there was a vacancy in that position.

Based on the foregoing factors and considerations, the Court will is constrained to order the following relief, pendente lite:

1. Calabrese is hereby removed, on a temporary basis, pendente lite, as the Chapter 13 Trustee of the Pending Cases, and the UST is substituted as acting Chapter 13 Trustee, until further order of the Court;

2. Calabrese is ordered to forthwith make available for removal by the UST, at the expense of the UST, all files, accounts, accountings, and books and records relating to the Pending Cases (the "Pending Case Documents") and further to forthwith turn over to the UST all moneys, deposits and bank accounts relating to the Pending Cases (the "Pending Case Proceeds");

3. The UST shall cause to be paid into one or more segregated accounts (the "Proceeds Accounts") all of the Pending Case Proceeds and all other moneys received by him thereafter and relating to the Pending Cases and shall keep separate records relating to all receipts and disbursements therefrom;

4. The UST shall also maintain a specially segregated interest bearing account (the "Compensation Account") into which the UST shall deposit all compensation which would have been due to Calabrese, pursuant to 28 U.S.C. § 586(e) or otherwise, as if she had made all of the disbursements from the Proceeds Accounts;

5. Calabrese is hereby granted a lien in the Compensation Account to the extent of her interest;

6. Upon the issuance of a final order, if any, denying the UST Motions, the proceeds of the Compensation Account, including interest, shall be turned over to Calabrese as if she had made all disbursements from the Proceeds Accounts, less only such amount as the Court may determine was a cost savings to Calabrese as a result of the disbursements made by the UST;

7. Upon the issuance of a final order allowing the UST Motions, the Compensation Account shall be turned over to the UST, less only such amount as the Court shall determine is due to Calabrese, pursuant to 28 U.S.C. § 586(e), or otherwise, reduced by the cost of the removal from her possession of the Pending Case Documents;

8. The Pending Case Documents and all other documents arising thereafter with respect to the Pending Cases shall be maintained in the offices of the UST in Worcester, Massachusetts and will be made available to Calabrese or her agents during reasonable business hours and upon 48 hours prior notice.

9. The UST is ordered to notify each party in interest in the Pending Cases of his substitution as acting Chapter 13 Trustee as soon as reasonably possible;

10. The deadline or completion of discovery in this matter is set for June 30, 1995, subject to further extensions as may be approved by the Court, upon Motion filed prior to the said deadline.

11. In the event of any motion filed by the parties relating to a discovery dispute, the said motion shall be heard on an expedited basis, without regard to the provisions of Local Rule 26(D);

12. A pre-trial conference is set for July 18, 1995 at 10:00 am, in Worcester, Massachusetts.

Henry J. Boroff

United States Bankruptcy

Dated: March 24, 1995

ORDER

For the reasons set forth in the separate Memorandum of Decision issued on March 24, 1994, upon consideration of the motion filed by the United States trustee ("UST"), pursuant to *11 U.S.C. § 324*, for the removal of Cecilia Calabrese ("Calabrese") from the above-captioned case and from all other cases in which she is the Chapter 13 Trustee in the Western Division of this District (the "Pending Cases"), the Court hereby orders the following relief:

1. Calabrese is hereby removed, on a temporary basis, pendente lite, as the Chapter 13 Trustee of the Pending Cases, and the UST is substituted as acting Chapter 13 Trustee, until further order of the Court;

2. Calabrese is ordered to forthwith make available for removal by the UST, at the expense of the UST, all files, accounts, accountings and books and records relating to the Pending Cases the "Pending Case Documents") and further to forthwith turn over to the UST all moneys, deposits and bank accounts relating to the Pending Cases (the "Pending Case Proceeds");

3. The UST shall cause to be paid into one or more segregated accounts (the "Proceeds Accounts") all of the Pending Case Proceeds and all other moneys received by him thereafter and relating to the Pending Cases and shall keep separate records relating to all receipts and disbursements therefrom;

4. The UST shall also maintain a specially segregated interest bearing account the "Compensation Account") into which the UST shall deposit all compensation which would have been due to Calabrese, pursuant to *28 U.S.C. § 586(e)* or otherwise, as if she had made all of the disbursements from the Proceeds Accounts;

5. Calabrese is hereby granted a lien in the Compensation Account to the extent of her interest;

6. Upon the issuance of a final order, if any, denying the UST Motions, the proceeds of the Compensation Account, including interest, shall be turned over to Calabrese as if she had made all disbursements from the Proceeds Accounts, less only such amount as the Court may determine was a cost savings to Calabrese as a result of the disbursements made by the UST;

7. Upon the issuance of a final order allowing the UST Motions, the Compensation Account shall be turned over to the UST, less only such amount as the Court shall determine is due to Calabrese, pursuant to *28 U.S.C. § 586(e)*, or otherwise, reduced by the cost of the removal from her possession of the Pending Case Documents;

8. The Pending Case Documents and all other documents arising thereafter with respect to the Pending Cases shall be maintained in the offices of the UST in Worcester, Massachusetts and will be made available to Calabrese or her agents during reasonable business hours and upon 48 hours prior notice;

9. The UST is ordered to notify each party in interest in the Pending Cases of his substitution as acting Chapter 13 Trustee as soon as reasonably possible;

10. The deadline for completion of discovery in this matter is set for June 30, 1995, subject to further extensions as may be approved by the Court, upon motion filed prior to the said deadline;

11. In the event of any motion filed by the parties relating to a discovery dispute, the said motion shall be heard on an expedited basis, without regard to the provisions of Local Rule 26(D);

12. A pre-trial conference is set for July 18, 1995 at 10:00 a.m. in Worcester, Massachusetts

    Henry J. Boroff

    United States Bankruptcy

Dated: March 24, 1996

A service of Craig and Macauley. All rights reserved. Privacy Statement
Use of this site constitutes your acceptance of these Terms of Use.